# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Riverside Church,                      Civil No. 15-1575 (DWF/JSM)

            Plaintiff,

v.                                             **MEMORANDUM OPINION AND ORDER**

City of St. Michael,

            Defendant.

---

Samuel W. Diehl, Esq., Dean A. LeDoux, Esq., Gregory R. Merz, Esq., and Matthew P. Webster, Esq., Gray Plant Mooty Mooty & Bennett, PA, and G. Craig Howse, Esq., and Jacob R. Grassel, Esq., Howse & Thompson, PA, counsel for Plaintiff.

George C. Hoff, Esq., and Jared D. Shepherd, Esq., Hoff, Barry & Kozar, counsel for Defendant.

---

## INTRODUCTION

        This case arose after a church tried unsuccessfully to purchase a theater as a place to show simulcasts of its services. The city blocked the purchase by concluding that its zoning ordinance prohibited the proposed use. The city, however, knew at the time that it could amend the ordinance to allow the church to purchase the theater without abandoning its zoning concerns. The church filed suit alleging that the ordinance violated the church's constitutional rights and that the city had defamed the church in various press releases. After a bench trial, the Court concluded that the city had violated

the church's constitutional rights and that the church had not been defamed. The Court awarded the church $1,354,595.

The parties both moved for post-judgment relief. This matter is before the Court on the defendant's motions for amended findings and for a new trial (Doc. No. 168), and the plaintiff's amended motion to amend the judgment (Doc. No. 176). Based on the parties' submissions and the Court's review of the record, the Court grants the parties' motions in part and denies them in part. The Court will issue amended findings and conclusions consistent with this memorandum opinion.

## BACKGROUND

### A.     Factual Background

The Court assumes the reader's familiarity with the facts as set forth in the amended findings. (Doc. No. 191.) This dispute centers on a fifteen-screen movie theater in St. Michael, Minnesota (generally, the "Theater Property"). In early 2014, a bank was selling the Theater Property after it had sat unused since 2010. The Theater Property was zoned in a commercial district (the "B-1 Zone"). During this time Riverside Church, a church in Big Lake, Minnesota, had explored expanding to a satellite site after it had exhausted its ability to expand the Big Lake site. Riverside identified the Theater Property as a possible satellite location where it could play simulcasts of its services in Big Lake.

In January 2014, Riverside called Marc Weigle about whether Riverside could purchase the Theater Property as its satellite site. Weigle is the most knowledgeable

employee for the City of St. Michael regarding zoning and ordinance issues. Weigle told Riverside that the Theater Property was not zoned for assembly uses, which included houses of worship. Riverside worked with the City from January to April to try to reach a resolution where Riverside could use the Theater Property. But those efforts somewhat ended in April 2014 when another buyer purchased the Theater Property.

Riverside, however, was still trying to purchase the Theater Property from its new owner, and Riverside therefore continued to discuss the zoning ordinance with the City. On June 12, 2014, the City's attorney wrote to Riverside and recommended that Riverside "file an application to re-zone the property or to amend the city's zoning regulations to allow a religious institution to operate in a commercial zone." (P045.) So, in July 2014, Riverside did just that: It filed an application requesting that the City change the B-1 Zone to allow assemblies, including houses of worship, as a permitted use.[1]

In August 2014, Riverside entered into a purchase agreement to buy the Theater Property. Thus, the need for the City's decision on Riverside's application became more urgent. The parties exchanged possible solutions, but nothing definitive materialized. The City's principal (if not only) concern with the sale was the impact on traffic in the area. The City commissioned a traffic study, which was completed in October 2014. The traffic study found that once the church reached 1,200 worshippers, the traffic at an intersection leading to a highway would not function properly. The parties then tried to

---

[1] Here, the relevant zoning nomenclature is permitted and conditional uses. The City can place conditions on conditional-use properties, while the City generally cannot put limitations on permitted uses.

3

negotiate a settlement around a 1,200-person limit.  The parties reached an impasse after the City added a provision that required Riverside to waive its rights in the event that the City had to sue to enforce the agreement.

Meanwhile, the City had to make a decision on Riverside's pending application.  The City had held a number of working sessions and public hearings on the matter.  The City considered a number of options, including amending the ordinance to allow assembly uses in the B-1 Zone as a conditional use.  On November 10, 2014, however, the City adopted a moratorium on new assembly uses, including churches, while the City studied potential impacts.  At the same meeting, the City amended the ordinance to remove theaters from the list of permitted uses in the B-1 Zone and added multiplex theaters as a conditional use.  Then on November 25, 2014, the City rejected Riverside's application.

In early 2015, Riverside had yet another opportunity to purchase the Theater Property through an option contract.  Under the option contract, Riverside could purchase the Theater Property for roughly $3.5 million plus the costs that the owner had incurred to prepare the Theater Property for use.  This time, Riverside filed a lawsuit to compel the City to change the ordinance.  On April 8, 2015—mere weeks after Riverside filed its complaint—the City amended the ordinance to allow assembly uses, including churches, in the B-1 Zone.  On April 21, 2015, the City issued a conditional use permit to Riverside.  But by then, the price—over $5 million—had exceeded what Riverside could afford.  Thus, Riverside could not exercise the option.

### B. Procedural History

The procedural history of this case is complex. As relevant here, Riverside brought claims alleging that the City had violated Riverside's First Amendment rights to free exercise of religion and its rights to free speech and assembly. Riverside also claimed that it was defamed by the City in released statements. The Court denied Riverside's free-exercise claim on the City's motion for summary judgment, but allowed Riverside's free-speech-and-assembly claim and its defamation claim to proceed to trial.

The Court held a bench trial from October 18, 2016, to November 8, 2016. At the conclusion of the trial, the Court found that the City had violated Riverside's constitutional rights, but that the City had not defamed Riverside. As a result, the Court awarded Riverside damages in the amount of $1,354,595. The City filed a motion for a new trial and a motion to amend the judgment. Riverside also filed a motion to amend the judgment.[2]

---

[2] The Court cites to Defendant's Memorandum in Support of its Motion for a New Trial (Doc. No. 173, pages 1-12) as "City's New Trial Memo."; Defendant's Memorandum in Support of its Motion for Amended Findings (Doc. No. 173, pages 12-42) as "City Amended Memo."; Riverside's Opposition (Doc. No. 186) as "Riverside Opp."; the City's Reply (Doc. No. 189) as "City Reply." For Riverside's post-trial motion, the Court cites to Riverside's Memorandum in Support of it Amended Motion to Amend the Judgment (Doc. No. 176) as "Riverside Memo."; The City's Opposition (Doc. No. 185) as "City Opp."; and Riverside's Reply (Doc. No. 188) as "Riverside Reply."

Riverside asks the Court to disregard the City's Reply because the City failed to abide by Local Rule 7.1 when it filed a lengthy opening brief. The Court declines Riverside's invitation, but cautions the parties about deviating from the District's Local Rules.

# DISCUSSION

## I. Motion for a New Trial

### A. Legal Standard

Under Rule 59 of the Federal Rules of Civil Procedure, the Court may grant a motion for a new trial to all or any of the parties on all issues or on particular issues. Fed. R. Civ. P. 59(a). The Court may grant such a motion "after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." *Id.* Additionally, the Court may "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." *Id.* The standard for granting a new trial is whether the findings are against "the great weight of the evidence." *See Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996) (determining that, in order to grant a new trial, "the trial court must believe . . . that the verdict was so contrary to the evidence as to amount to a miscarriage of justice").

### B. St. Michael's Motion for A New Trial

St. Michael argues that the Court should amend its findings because: (1) Riverside's constitutional claim was not ripe; (2) the findings failed to accurately recount the settlement negotiations; and (3) the City did not cause Riverside any damages.

### 1. Ripeness

St. Michael argues that the Court erred because Riverside did not have a ripe § 1983 claim. "Ripeness is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). It "dictates that courts should decide only existing, substantial controversies, not hypothetical questions or possibilities," and it "becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *City Commc'ns, Inc. v. City of Detroit*, 888 F.2d 1081, 1089 (6th Cir. 1989). In land use disputes—including those involving the First Amendment—ripeness requires a plaintiff to "obtain a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations." *Murphy*, 402 F.3d at 348 (citing *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985)); *see also Miles Cristi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537-38 (6th Cir. 2010); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1224-25 (11th Cir. 2004). One reason for this finality requirement is that only with a final decision from a municipality "will a court know precisely how a regulation will be applied to a particular parcel." *Murphy*, 402 F.3d at 348.

The Court has already concluded (twice) that Riverside's claim ripened when it received a final decision from the City on November 25, 2014. *See, e.g.*, *Church v. City of St. Michael*, 205 F. Supp. 3d 1014, 1030 (D. Minn. 2016). Riverside first approached the City in January 2014 to express its interest in buying the Theater Property. For much

7

of the spring 2014, the City took the position that a church could not use the Theater Property. On June 12, 2014, the City's attorney wrote to Riverside and recommended that Riverside "file an application to re-zone the property or to amend the city's zoning regulations to allow a religious institution to operate in a commercial zone." (P045.) In July 2014, Riverside submitted its application to the City requesting that "Assemblies, Religious Institutions and Places of Worship" be allowed in the B-1 zone as permitted uses. The City considered the application until November 25, 2014, when the City rejected the application.

The City argues that rejecting the application for permitted use did not ripen Riverside's claim, which is premised on a conditional-use amendment. The City's argument is somewhat head spinning: First, the City argues that Riverside should have amended its application to request a conditional-use amendment, instead of a permitted-use one. (City New Trial Memo. at 8.) Later, the City argues that Riverside should have sought a variance from the Moratorium Ordinance after the City had just rejected Riverside's application. (City Amend Memo. at 18.) Then, in its Reply, the City seems to wonder why Riverside even asked the City for permission because its proposed use might have met the definition of a theater, a permitted use in the B-1 Zone. (City Reply at 2.)

None of the City's arguments demonstrates that the great weight of the evidence is against the Court's finding that Riverside's claim was ripe. The City tries to hide behind an apparent Kafkaesque bureaucracy, but the fact remains that the City knew when it was evaluating Riverside's application that one of its options was to amend the ordinance to

8

allow collective religious worship in the B-1 Zone as a conditional use. The City never asked Riverside to file a new application. Nor was there any obstacle preventing the City from unilaterally amending its ordinance. Indeed, in November 2014, the City unilaterally amended the ordinance to remove theaters from permitted uses in the B-1 Zone and to make multiplex theaters a conditional use. Given that the City made a final decision not to amend the ordinance to allow collective religious worship in the B-1 Zone, either as a permitted or conditional use, the Court concludes that the City has failed to show that the great weight of the evidence is against the Court's finding that Riverside's § 1983 claim was ripe.

### 2. Attempted Settlement Findings

The City also argues that the Court erred by omitting some information regarding the parties' settlement negotiations leading up the City's November 25, 2014 decision to deny Riverside's application. The City argues that the omissions show that the City was willing to settle for certain conditions on Riverside's use of the Theater Property and that Riverside never applied for an amendment to the B-1 Zone for conditional uses. As a result, the City contends that the Court erred because its ruling is premised on the City failing to amend the ordinance in a manner that Riverside never asked for, and for which the City offered to settle.

The Court will amend its findings to include more detail on the parties' back and forth, but such an amendment does not alter the Court's ultimate conclusions. The City knew in 2014 that Riverside wanted to use the Theater Property for collective religious worship, the City knew its ordinance prohibited Riverside's intended use, and the City

9

knew that it could draft a more narrowly tailored ordinance to allow Riverside's use while protecting its traffic concerns. Those are the principal factors that led the Court to find the City liable. The City has therefore failed to show that a great weight of the evidence was against the Court's findings of liability.

### 3. Damages

The City also argues that Riverside is not entitled to damages because Riverside either caused or failed to mitigate its damages. These two arguments are interwoven. In essence, the City argues that Riverside should have tried to settle with the City. Riverside correctly points out that the settlement negotiations are inadmissible for this purpose—to disprove the amount of a claim. *See* F.R.E. 408. But even if the evidence were admissible, the City has the argument backwards: The City was in the position to mitigate its losses by amending the ordinance to allow Riverside to apply for a conditional use. All Riverside could do was wait (or sue).[3] Thus, the Court concludes that the City failed to show that the great weight of the evidence demonstrates that Riverside failed to mitigate its damages.

## II. Motion to Amend the Judgment

"Rule 59(e) motions serve a limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.' Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *United States v. Metro. St. Louis*

---

[3] The City's zoning ordinances prohibited Riverside from filing a similar application for an amendment within six months of the date of the denial. *See* § 155.440(A)(6)(d); *see also* (Tr. 676-77 (Weigle)).

*Sewer Dist.,* 440 F.3d 930, 933 (8th Cir. 2006) (internal quotations omitted); *see also Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills,* 141 F.3d 1284, 1286 (8th Cir. 1998). Relief under Rule 59(e) is granted in only "extraordinary" circumstances. *See United States v. Young*, 806 F.2d 805, 806 (8th Cir. 1986). After evaluating each of the City's and Riverside's proposed amendments, the Court will issue amended findings and conclusions. The Court rejects the parties' proposed amendments to the extent that they are not incorporated.

### A. City's Motion to Amend

The City requests that the Court amend its findings and conclusions in a number of respects. Much of Defendant's motion recycles its arguments for a new trial: Riverside's claim was not ripe and Riverside is not entitled to damages. For the reasons discussed above, the Court rejects those arguments. The City's remaining arguments focus principally on the Court's rejection of the traffic study.

The City asks the Court to revisit its findings regarding the 2014 traffic study. Specifically, the Court disregarded the findings as a basis for excluding collective religious worship from the B-1 Zone. The Court concluded, based on the City's own expert, that the traffic concerns were largely overblown—there was a chance the issues never would arise and the City could have reevaluated its options if it had reached that point. Further, none of those issues affected what the City knew in November 2014: That the City had a less restrictive way to mitigate traffic concerns without an outright

11

ban on collective religious worship in the B-1 Zone. Thus, the Court concludes that the City has failed to show that the Court manifestly erred by disregarding the traffic study.[4]

## B. Riverside's Motion to Amend

In Riverside's motion to amend, Riverside asks the Court to: (1) revisit its dismissal of Riverside's free-exercise claim; (2) increase the damage award; (3) amend the order to include prejudgment interest and (4) post-judgment interest.

### 1. Riverside's Free-Exercise Claim

Riverside asks the Court to reconsider its decision to grant summary judgment dismissing Riverside's free-exercise claim. Riverside argues that the Court can revisit the decision based on intervening new law from the United States Supreme Court in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017). In *Trinity Lutheran*, Missouri had set up a grant program for certain nonprofits to replace their playground surfaces with materials from recycled tires. *Id.* at 2017. Missouri's Department of Natural Resources had a "strict and express policy of denying grants to any applicant owned or controlled by a church, sect, or other religious entity." *Id.* Missouri's DNR therefore denied Trinity Lutheran's application solely because it was a church. *Id.* at 2018. The Supreme Court concluded that Missouri had violated the Free Exercise Clause of the Constitution because it had expressly discriminated against Trinity Lutheran based on its status as a religious organization. *Id.* at 2021. The Supreme Court

---

[4] The City also argued that Riverside is not entitled to certain damages because it recouped the damages through donations from its parishioners. But whether Riverside received donations does not affect its right to recover damages from the City. Thus, the Court concludes the City has failed to show the Court committed manifest error by including damages later recouped from donations.

concluded, "[T]he exclusion of Trinity Lutheran from a public benefit for which it is otherwise qualified, solely because it is a church, is odious to our Constitution all the same, and cannot stand." *Id.* at 2025.

The Supreme Court's decision in *Trinity Lutheran* was premised on express discrimination based on religion. *See id.* at 2024 n.3 ("This case involves express discrimination based on religious identity." (plurality)). Here, in contrast, the Court has already concluded that the ordinance does not expressly discriminate against religion consistent with the Eighth Circuit's opinion in *Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464, 472 (8th Cir. 1991). *Church v. City of St. Michael*, 205 F. Supp. 3d 1014, 1043 (D. Minn. 2016). Nothing in *Trinity Lutheran* affected content-neutral laws. Thus, the Court declines to revisit its summary judgment order.

## 2. Damages

Riverside also requests that the Court amend its damages calculation. The Court concluded that Riverside's damages resembled the damages for the tortious interference with a prospective contract.[5] The Court then measured damages based on the increase in the contract price between the purchase agreement and the option contract, less the amount attributable to the improvements during that time. Based on that calculation, the

---

[5] The City suggests that the Court erred by not using the standard for tortious interference with an existing contract instead of a prospective contract because the parties had a purchase agreement. While the standard does not change the damage calculation, the Court concludes that tortious interference with a prospective contract more aptly encapsulates this case because tortious interference with a contract requires the procurement of a breach. *See Storage Tech. Corp. v. Cisco Sys., Inc.*, 395 F.3d 921, 924 (8th Cir. 2005) (applying Minnesota law). Here, Riverside did not breach the purchase agreement. Instead, Riverside exercised a contingency to cancel the contract.

Court determined that the increase in the purchase price was $2,758,054.95, but that $1,472,479.95 was attributable to improvements to the Theater Property. Thus, the Court awarded $1,285,575 to Riverside.

Riverside argues that the Court erred by excluding the improvements because those improvements would not benefit Riverside. For example, the owner put in expensive projectors, which cost over $80,000, but which had no benefit to Riverside. (PO21.)[6] Riverside, however, failed to show that the improvements provide no benefit— either for use or resale. If the Court were to allow Riverside to recover the resale value of the improvements, then Riverside's damages would exceed the pecuniary harm that it suffered from losing out on purchasing the Theater Property. *See Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014). For Riverside to be able to recover damages for the projectors, for example, Riverside would have had to show that the projectors could not be resold. Riverside did not put on such evidence. Thus, the Court concludes that Riverside has failed to show that the Court committed manifest error in excluding improvements from the damages calculations.

### 3. Prejudgment interest

Riverside also moves the Court to amend the order to include prejudgment interest. Courts in the Eighth Circuit usually look to state law to decide whether

---

[6] Plaintiff's Exhibit 21 was a cost spreadsheet from the Theater Property owner. Riverside had agreed to pay the added costs under the option contract. The City objected to this document for lack of authentication, but Riverside used this exhibit as part of its cross-examination of Pastor Machmer. Thus, the objection seems inappropriate. Nonetheless, the Court finds that Pastor Machmer provided sufficient testimony to authenticate the document. The Court therefore overrules Plaintiff's objection.

prejudgment interest should be awarded in a § 1983 claim. *See* 42 U.S.C. § 1988; *see also Winter v. Cerro Gordo Cty. Conservation Bd.*, 925 F.2d 1069, 1073 (8th Cir. 1991) (applying Iowa law); *Murphy v. City of Elko*, 976 F. Supp. 1359, 1363 (D. Nev. 1997) (noting the Eighth Circuit follows state law for prejudgment interest in § 1983 claims). *But see Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1330 (8th Cir. 1995) ("The question of whether interest is to be allowed, and also the rate of computation, is a question of federal law where the cause of action arises from a federal statute."). The City argues that prejudgment interest should not be awarded based on principles of equity. It appears, however, that courts in the Eighth Circuit simply look at state law. Here, the Minnesota Statute § 549.09 does not consider the claimed inequities of awarding prejudgment interest. Based on § 549.09, Plaintiff is entitled to prejudgment interest at a rate of 4%.[7] Thus, the Court concludes prejudgment interest is appropriate.

Riverside also argues that the interest should be compounded annually. Minnesota Statute § 549.09, Subdivision 1(c)(1)(i), however, provides that the interest rate is a simple rate. *See United States v. Wilson*, 926 F.2d 725, 727 (8th Cir. 1991) (per curiam) (applying simple interest rate absent a statute or contract providing for compound interest). Thus, the Court will apply a simple interest rate.

---

[7] Minnesota Statute § 549.09, Subdivision 1(c)(1)(i), requires the state court administrator to publish an annual rate. Then pre-verdict judgments are set at the publish rate or 4%, whichever is greater. This year, the rate is 4%. *See 2017 Interest Rates on State Court Judgments and Arbitration Awards*, available at http://mn.gov/commerce-stat/pdfs/interest-rate-court-judgement.pdf.

15

Finally, the Court must determine the appropriate date that the prejudgment interest began to accrue. Riverside argues that November 25, 2014, (the date of the City's final decision) is the correct date, while the City argues that March 24, 2015, (the date the complaint was served) is the correct date. Under Minnesota Statute § 549.09, Subdivision 1(b), prejudgment interest begins to accrue on the date the action commences or the date that the written demand was given, whichever is earlier. Here the action was commenced upon filing, March 23, 2015, a day before written demand was served. *See* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 4 *Fed. Prac. & Proc.*. § 1052 (4th ed. 2017). Accordingly, prejudgment interest here will accrue beginning on March 23, 2015. The Court therefore will amend its order to include prejudgment interest at a simple rate of 4% and beginning to accrue on March 23, 2015.

### 4. Post-judgment interest

Riverside also requested the Court to amend its order to include post-judgment interest. The City does not dispute post-judgment interest is appropriate. Accordingly, the Court will amend its order to include post-judgment interest.

### ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motions for Amended Findings and for a New Trial (Doc. No. [168]) are **GRANTED IN PART and DENIED IN PART**.

2. Plaintiff's Amended Motion to Amend the Judgment (Doc. No. [176]) is **GRANTED IN PART and DENIED IN PART**.

3. The Court will issue amended findings and conclusions consistent with this memorandum opinion. The Court denies the parties' motions for amended findings to the extent that the Court does not incorporate the parties' proposed changes.

Dated: August 14, 2017      s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       United States District Judge